Jean M. HAMMER, Respondent,

v.

INVESTORS LIFE INSURANCE COMPANY OF NORTH AMERICA, Petitioner, Appellant,

James A. Ruf, Defendant.

No. C3–92–1102.

Supreme Court of Minnesota.

Jan. 14, 1994.

David B. Potter, Fred Strasheim, Oppenheimer, Wolff & Donnelly, St. Paul, for appellant.

Jeremy S. Steiner, Vesely, Miller & Steiner, Hopkins, for respondent.

TOMLJANOVICH, Justice.

Investors Life Insurance Company of North America appeals from the decision of the court of appeals affirming the judgment and post-trial order of the trial court, the effect of which required it to pay life insurance proceeds to Jean M. Hammer, the surviving spouse and beneficiary of the insured, Sheldon Hammer. We reverse and remand.

Sheldon Hammer submitted an application for a $50,000 nonsmoker's flexible premium adjustable life insurance policy to Investors Life on October 19, 1985, with the assistance of James Ruf, an agent for Investors Life.[1] Among various questions inquiring into the applicant's medical and personal history was the question "Have you smoked any cigarettes during the last 12 months?" Mr. Ruf read the question to Hammer who then verbally responded "no." When the application was completed, Hammer signed it, thereby

---

1. Sheldon Hammer first applied to the Independent Order of Foresters for a nonsmoker's life insurance policy in October 1984; his wife applied at the same time for spousal coverage. They were assisted in completing the application by James Ruf, then an agent of Independent, who inquired whether Mr. Hammer had smoked cigarettes "within the last 12 months." The application answered "no" and then he and his spouse signed the application, certifying that the representations were accurate. Agent Ruf later became the agent for Investors Life and suggested that Mr. Hammer apply for coverage from Investors.

verifying that all statements and answers were true and complete. The policy was issued by Investors on November 1, 1985.

The insured died of causes unrelated to smoking on October 22, 1987, shortly before the expiration of the 2–year contestability period. Jean Hammer, the deceased insured's beneficiary, applied for the $50,000 death benefit on November 17, 1987. Because the death occurred within the contestability period, Investors Life undertook a routine investigation during which it discovered that the insured had misrepresented his smoking history on his application. The insurer therefore denied the claim, rescinded the policy and tendered a refund of all premiums paid with interest, basing that rescission decision solely on Hammer's application misrepresentation with regard to his cigarette smoking history. The insured's beneficiary commenced this action, alleging breach of contract.

The case was initially tried before a jury, during which the insurer offered unrefuted testimony that the insured did not quit smoking cigarettes before October 31, 1984. Nevertheless, the jury found that the insured had not made willfully false or intentionally misleading answers on his insurance application. On that basis, the trial court awarded the insurance proceeds to the beneficiary. Investors Life appealed, claiming error not only in the exclusion of certain testimony, but also in the submission to the jury of the question of ambiguity in the phrase contained in the application, "during the last 12 months." The court of appeals reversed the rulings with regard to excluded testimony and instructed the trial court on remand that the ambiguity question was one of law for the court to decide. *Hammer v. Investors Life Ins. Co.*, 473 N.W.2d 884 (Minn.App.1991).

On remand the trial court determined that the phrase was ambiguous and instructed the jury that the "last 12 months" period ran from November 1, 1984 to October 9, 1985.[2] The jury found that there was no misrepresentation of the events of the "last 12 months" prior to the application as defined by the trial court, and again Investors Life appealed. Explaining that in its view, reasonable minds could differ as to the phrase, the court of appeals affirmed. It similarly affirmed three evidentiary rulings made by the trial court. *Hammer v. Investors Life Ins. Co.*, No. C3–92–1102 (1993 WL 4120) (Minn.Ct.App., Jan. 12, 1993). We granted the insurer's petition for further review to consider only the propriety of the decisions as they characterize the phrase "during the last 12 months" as ambiguous.

The standards by which we review this determination are well-settled. The question of whether an ambiguity exists in an insurance policy or an application for insurance[3] is one of law for the court; if an ambiguity exists, it is for the court to construe the language against the insurer. *Columbia Heights Motors v. Allstate Ins. Co.*, 275 N.W.2d 32, 34, 36 (Minn.1979). On appeal, we are not bound by lower court conclusions with respect to issues of law, and instead conduct an independent review of the record. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1985). The language will be held ambiguous only if it is reasonably subject to more than one interpretation. *Columbia Heights Motors*, 275 N.W.2d at 34. If no ambiguity exists, there is no reason for construction, and the court is bound to attribute the usual and accepted meaning to the phrase. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (Minn.1960). The court is not free to construe the phrase in such a way as to afford coverage or to identify an ambiguity where none exists. *Firemen's v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982).

---

**2.** The special interrogatory submitted to the jury read as follows:

> When Sheldon Hammer responded "No" on October 9, 1985 to Investors Life Insurance Application Question 5(h) ['Have you smoked any cigarettes during the last 12 months?'], did he falsely represent his cigarette smoking history for the period November 1, 1984 to October 9, 1985?

The jury answered the question "no."

**3.** By operation of Minn.Stat. § 61A.03, subd. 1(d) (1992), an insurance application is incorporated into and therefore a part of a policy, where a copy is endorsed upon or attached to the policy as issued. Accordingly, the same rules of construction apply to insurance applications as to the policies themselves.

■ While the beneficiary's plight is sympathetic where the insured died but 9 days before the contestability period expired, we have in the past "fastidiously guard[ed] against the invitation to 'create ambiguities' where none exist," *Columbia Heights Motors*, 275 N.W.2d at 36 (citing *Farkas v. Harford Acc. & Indem. Co.*, 285 Minn. 324, 173 N.W.2d 21 (1969)), and must do so here.

■ In assigning to the phrase "during the last 12 months" its plain and ordinary meaning, the period "during the last 12 months" here encompasses the date of application, October 9, 1985 and each of the 12 preceding calendar months to October 9, 1984. *See* Minn.Stat. § 645.14 (1992) and *Matter of PRS Products, Inc.*, 574 F.2d 414, 419 (8th Cir.1978) (commenting that "most courts have held that monthly period runs from numerical day to numerical · day"). Time periods designated in terms of months are generally understood to run from the given day in one month to the corresponding date in the specified preceding or succeeding month. To hold otherwise would be to complicate a rather simple calculation required of an insurance applicant and to inject considerable uncertainty into a rather routine inquiry.

■ The record quite clearly demonstrates that the applicant's response to the question most critical to the issuance of a nonsmoker's life insurance policy was at best, inaccurate, or at worst, willfully false or intentionally misleading. It is for the jury to determine into which category the response best fits. *See* Minn.Stat. § 61A.11 (1992) and *Siemers v. United Benefit Life Ins. Co.*, 246 Minn. 459, 465, 75 N.W.2d 605, 609 (1956).

Reversed and remanded.